## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN EDWARD SCALES** | ) | |
| **STEVEN SCALES,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Criminal Action No. 03-257** |
| | ) | **Civil Action No. 06-1138** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>MEMORANDUM OPINION</u>

CONTI, District Judge.

Pending before the court is a motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255 ("petitioner's motion") (Doc. No. 356) filed by petitioner Steven Edward Scales ("petitioner"). After reviewing petitioner's motion and the government's brief in opposition and the proposed findings of fact and conclusions of law submitted by each party, the court will deny petitioner's motion for the reasons set forth herein.


## I.  **Background**

On October 28, 2003, a federal grand jury returned a one-count indictment charging, among others, petitioner and Rebekah Crux ("Crux" and together with petitioner, "defendants") with conspiracy to distribute and possession with intent to distribute five (5) kilograms or more of cocaine from in or around January 2000 to May 23, 2002 in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846.  (Doc. No. 1.)  A superseding indictment was filed on December 4, 2003, charging defendants with one count of conspiracy to distribute and possession with the intent to distribute five (5) kilograms or more of cocaine from in or around January 2000 to May

23, 2002 in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846, and one count of

possession with intent to distribute five hundred (500) grams or more of cocaine on or about

April 29, 2002, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 18 U.S.C. § 2.  (Doc.

No. 6.)

On February 24, 2004, petitioner pled not guilty at his arraignment.  On July 12, 2005, the

government filed an information to establish a prior conviction of petitioner.  (Doc. No. 306.)

On July 13, 2005, petitioner withdrew his plea of not guilty and pled guilty to count one of the

superseding indictment.  (Doc. No. 310.)  During the hearing held with respect to petitioner's

entry of a guilty plea, the plea agreement was entered into evidence.  (Doc. No. 311.)  On

October 13, 2005, petitioner was sentenced to imprisonment for a term of 262 months to be

followed by supervised release for a term of four years.  (Doc. No. 334.)  Although petitioner did

not appeal his sentence, "there is no procedural default for failure to raise an ineffective

assistance claim on direct appeal."  Massaro v. United States, 538 U.S. 500, 503-04 (2003).[1]

On August 25, 2006, the clerk of court received and filed petitioner's motion.  In the

motion, petitioner listed five grounds for his claim that he is being held in violation of the

Constitution, laws, or treaties of the United States and his prayer for relief that the court vacate,

set aside, or correct his sentence.  Specifically, petitioner alleged (1) the court was without

jurisdiction to impose an enhanced sentence because the information required by 21 U.S.C. § 851

and the service of notice relating to this information were made after petitioner pled guilty; (2)

---

[1] The Supreme Court in Massaro held that ineffective assistance of counsel claims may be collaterally reviewed even when those claims were not raised on direct appeal.  A claim based upon ineffective assistance of counsel is an exception to the general rule that only claims raised on direct appeal may be raised on collateral review absent a showing of cause and prejudice.  See Massaro, 538 U.S. at 504 (citing United States v. Frady, 456 U.S. 152, 167-68 (1982); Bousley v. United States, 523 U.S. 614, 621-22 (1998)).  "The procedural default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments."  Id.

petitioner was denied the effective assistance of counsel in violation of the Sixth Amendment because his counsel, James DePasquale, Esq. ("DePasquale"), failed to object to the defect in the government's section 851(a)(1) information, (3) petitioner was denied the effective assistance of counsel in violation of the Sixth Amendment because his defense counsel failed to object to the designation of petitioner as a career offender; (4) petitioner was denied the effective assistance of counsel in violation of the Sixth Amendment because his counsel induced him to enter a guilty plea based upon false promises; and (5) petitioner was denied the effective assistance of counsel in violation of the Sixth Amendment because his counsel declined to pursue an appeal as requested by petitioner.

On August 29, 2006, the court issued a notice that the petitioner's motion was filed and directed the government to file a response and a brief in opposition on or before September 18, 2006. On September 18, 2006, the government filed its response in opposition. (Doc. No. 359.) Petitioner was appointed counsel to represent him in connection with his motion. An evidentiary hearing was held on May 1, 2008. (Doc. No. 382.) At the hearing, petitioner was represented by counsel. Petitioner and his former counsel testified.

On this 25th day of November 2008, the court makes the following findings of fact and conclusions of law with respect to petitioner's motion.


## II.  Standard of Review

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motion and files and records of the case show conclusively that the movant is not entitled to relief. 28 U.S.C. § 2255 ("Unless the motion and

the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005).

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside, or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  The Supreme Court recognizes that the statute provides four grounds upon which relief can be granted:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence "is otherwise subject to collateral attack."

3 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 593 at 695 (3d ed. 2004) (quoting Hill v. United States, 368 U.S. 424, 426-27 (1962)).  The statute provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255.  In this motion only the first two grounds – that the sentence was imposed in violation of the Constitution or laws of the United States and that the court was without jurisdiction to impose the sentence – are implicated.

### III.  Findings of Fact

#### A.  Petitioner's arrest and the government's 21 U.S.C. § 851 information

1.      Petitioner was arrested on state charges on April 29, 2002.  The state charges were based upon the same conduct charged in the instant case.  Petitioner was released on bond for the state charges.  (Evid. Hr'g Tr. 5/1/2008 at 8-9.)

2.      On December 4, 2003, petitioner was indicted in a superseding indictment for the instant offense.  (Petitioner's proposed findings of fact ("Pet'r's Facts") ¶ 1.)

3.      On or about January 26, 2004, petitioner was arrested in Kansas in relation to the instant offense.  He was then extradited to the Western District of Pennsylvania.  (Pet'r's Facts ¶ 2.)

4.      DePasquale was initially hired by petitioner to represent him with respect to the state charges.  (Evid. Hr'g Tr. 5/1/2008 at 8.)  Petitioner retained DePasquale to represent him in the instant case.  (Pet'r's Facts ¶ 3.)  DePasquale spent more time with petitioner than any other client DePasquale ever had.  (Evid. Hr'g Tr. 5/1/2008 at 84-85.)  Petitioner would call DePasquale a couple times each week, and DePasquale would go to see petitioner at least once a month and often once a week while petitioner was incarcerated at the Allegheny County Jail.  (Evid. Hr'g Tr. 5/1/2008 at 85, 92.)

5.      Petitioner asked DePasquale many questions.  Often the questions were not pertinent, but DePasquale would nonetheless answer them.  (Evid. Hr'g Tr. 5/1/2008 at 92.)   Petitioner also would frequently repeat the same questions, and DePasquale continuously gave consistent answers.  (Evid. Hr'g Tr. 5/1/2008 at 105.)  DePasquale spoke to petitioner in as plain language as possible.  DePasquale did not at any time have difficulty communicating with petitioner.  (Evid. Hr'g Tr. 5/1/2008 at 106.)

6.      On February 24, 2004, petitioner entered a plea of not guilty at his arraignment for the instant offense.  (Pet'r's Facts ¶ 4.)

7.      Petitioner filed several motions to suppress evidence in instant case.  Shortly before the suppression hearing, Assistant United States Attorney Mr. Gregory Nescott, Esq. ("Nescott") communicated a plea offer to DePasquale.  DePasquale communicated the plea offer to petitioner.  (Evid. Hr'g Tr. 5/1/2008 at 85.)  Nescott offered to seek a term of imprisonment of a mandatory twenty years as opposed to mandatory life, in addition to withdrawing charges pending against petitioner in Kansas for which petitioner could have also faced a term of imprisonment of mandatory life.  (Evid. Hr'g Tr. 5/1/2008 at 85-86.)  Kurt Kearns ("Kearns") was petitioner's attorney in Kansas.  After Nescott made the offer, petitioner, DePasquale, and Kearns participated in a conference call.  During the call, DePasquale and Kearns recommended that petitioner accept the plea offer.  Kearns was particularly forceful in his recommendation.  Despite the advice, petitioner refused to accept the plea offer, because he personally thought he could obtain favorable outcomes in both cases.  (Evid. Hr'g Tr. 5/1/2008 at 88.)  DePasquale sent a letter dated October 11, 2004 to petitioner confirming the conference call and the government's offer.  (Evid. Hr'g Tr. 5/1/2008 at 86; Evid. Hr'g 5/1/2008 Gov't Ex. 2.)

8.      Petitioner rejected the plea offer, and the suppression hearing was held on December 8, 2004.  After the hearing, the motions to suppress were denied.  (Evid. Hr'g Tr. 5/1/2008 at 84; Mem. Op. (Doc. No. 236).)

9.      After several months, certain other individuals indicted in the instant case agreed to cooperate with the government and accepted plea arrangements.  Petitioner decided to reconsider the government's plea offer.  (Evid. Hr'g Tr. 5/1/2008 at 89.)  Under the plea offer, petitioner

would acknowledge that he dealt 50 to 150 kilograms of cocaine. Petitioner thought the government could only prove that he dealt 8 kilograms of cocaine, but DePasquale advised him that the only way to contest the quantity of drugs would be to reject the plea offer. DePasquale told petitioner that rejecting the offer would be self-defeating, since he would then face mandatory life imprisonment. (Evid. Hr'g Tr. 5/1/2008 at 93.) Petitioner decided to accept a plea offer from the government. (Evid. Hr'g Tr. 5/1/2008 at 89.)

10.     On July 12, 2005, an information was filed by the government under 21 U.S.C. § 851 to establish a prior conviction of a felony drug offense. (Pet'r's Facts ¶ 41; Respondent's proposed findings of fact ("Resp't's Facts") ¶ 18.) DePasquale received a copy of the section 851 information on July 13, 2005, at petitioner's change of plea hearing, prior to the entry of the guilty plea. (Evid. Hr'g Tr. 5/1/2008 at 106-07.)

11.     On July 13, 2005, petitioner waived his right to a jury trial and pled guilty to count one of the superseding indictment, pursuant to the plea agreement. (Pet'r's Facts ¶¶ 9, 10, 66; Resp't's Facts ¶ 1.)

12.     This court credits the testimony of petitioner's counsel, DePasquale, that DePasquale did not assure petitioner that an information would not be filed, that DePasquale received a copy of the 21 U.S.C. § 851 information at the hearing on his waiver of his right to a jury trial and entry of a guilty plea, and that petitioner was aware the information was filed before the July 13, 2005 change of plea hearing. (Evid. Hr'g Tr. 5/1/2008 at 106-07.)

13.     During the hearing on petitioner's waiver of jury trial and entry of guilty plea, the court informed petitioner about the following:

The government has filed an information with the Court stating in

> writing a previous conviction to be relied upon during sentencing. The Government has informed the Court that it seeks an enhancement for reasons of a prior conviction on August 13, 1990, in the Court of Common Pleas of Allegheny County for a violation of the Controlled Substance, Drug and Device Act, possession with the intent to deliver cocaine, and violation of 35 Purdons Statutes, Section 780-113 (a)(30).

(Plea Hr'g Tr. 7/13/2005 at 11.)

14. Prior to the waiver of jury trial and entry of guilty plea, petitioner was aware of the terms of the plea agreement. DePasquale visited petitioner at the Allegheny County Jail prior to the hearing, explained the contents of the plea agreement, had petitioner read the agreement, and then answered petitioner's questions with respect to the agreement. (Evid. Hr'g Tr. at 91-92, 101-02.)

15. During the hearing on petitioner's waiver of jury trial and entry of guilty plea, Nescott reviewed the terms of the plea agreement and stated that "[t]he Government in the plea letter reserves the right to file a Section 851 information which, as the Court noted, it has filed in this case." (Plea Hr'g Tr. 7/13/2005 at 14.) The court asked DePasquale, "do you agree that Mr. Nescott has correctly stated the terms of the plea agreement?" DePasquale answered "[y]es." The court also asked petitioner, "[d]o you agree that Mr. Nescott has correctly stated the terms of the plea agreement as you understand them?" Petitioner answered "[y]es, I understand them." The court further asked petitioner, "[d]id he state them the way that you understand them?" Petitioner answered "[y]es, he stated like I understand." (Id. at 14-16.)

16. The record clearly reflects that petitioner and his counsel were aware the 21 U.S.C. § 851 information was filed prior to the time petitioner waived his right to a jury trial and entered a guilty plea. (Resp't's Facts ¶ 17; Plea Hr'g Tr. 7/13/2005 at 11-12; Evid. Hr'g Tr. 5/1/2008 at

106-07.)

**B. Designation of petitioner as a career offender**

17.     On the date of the hearing on petitioner's waiver of right to jury trial and entry of guilty

plea, petitioner had three prior felony drug convictions: (1) on August 13, 1990, petitioner pled

guilty in the Allegheny County Court of Common Pleas to Violation of the Controlled Substance,

Drug, Device, and Cosmetic Act: Possession of Cocaine; (2) on January 17, 1990, petitioner pled

guilty in the Westmoreland County Court of Common Pleas to Violation of the Controlled

Substance, Drug, Device, and Cosmetic Act: Possession With Intent to Deliver Crack Cocaine,

Possession of a Small Amount of Marijuana; and (3) on April 7, 1994, petitioner was found

guilty in the Westmoreland County Court of Common Pleas to Violation of the Controlled

Substance, Drug, Device, and Cosmetic Act: Possession With Intent to Deliver Cocaine,

Possession of Cocaine, Possession of Drug Paraphernalia.  (Presentence Investigation Report

("PIR") ¶¶ 42-44.)

**C. Petitioner's plea agreement and entry of guilty plea**

18.     This court credits the testimony of DePasquale that petitioner always knew he was facing

a mandatory twenty-year sentence, and that there was a possible mandatory life sentence.

DePasquale reviewed the sentencing guidelines with petitioner.  DePasquale told petitioner that

he was facing a mandatory twenty-year sentence, and that the best he could hope for was a

downward departure from the advisory guideline range, which at the low end was 262 months, to

the mandatory minimum of 240 months.  (Resp't's Facts ¶ 17; Evid. Hr'g Tr. 5/1/2008 at 103-

07.)

19.     At the time of the change of plea hearing, petitioner was 36 years old.  (Plea Hr'g Tr.

7/13/2005 at 4.)  Petitioner had appeared before judges for either a change of plea hearing or trial

on at least five previous occasions.  (Resp't's Facts ¶ 8; Evid. Hr'g Tr. 5/1/2008 at 35-37.)

DePasquale never advised petitioner to answer untruthfully questions asked by the court at the

change of plea hearing.  (Evid. Hr'g Tr. 5/1/2008 at 108.)

20.     Petitioner entered a guilty plea to count one of the indictment pursuant to a written plea

agreement, which was signed on July 13, 2005, and made part of the record.  The plea agreement

was accepted by the court.  (Pet'r's Facts ¶ 10.)

21.     At the beginning of petitioner's change of plea hearing, petitioner requested the

opportunity to review the plea agreement as follows:

> MR. NESCOTT:  Your Honor, there is a change of plea letter that
> we have gone over previously, but Mr. Scales wanted to read it
> again before he signed it.
>
> THE COURT:  Sure.  Take your time; don't be put under any
> pressure.
>
> (Mr. Scales reads and signs plea agreement.)
>
> MR. DePASQUALE:  Thank you, Your Honor.

(Resp't's Facts ¶ 9; Plea Hr'g Tr. 7/13/2005 at 2.)

22.     The written plea agreement, among other things, required petitioner to "acknowledge[]

his responsibility for the conduct charged in Count Four of the Superseding Indictment," forfeit

to the United States all property subject to forfeiture under 21 U.S.C. § 853 including but not

limited to $243,313.00, pay a special assessment to the clerk of court, waive former jeopardy or

double jeopardy claims, waive his appeal rights, subject to certain exceptions, and waive the right

to attack collaterally his sentence under 28 U.S.C. § 2255. (Plea Agreement (Doc. No. 311) at 2; Plea Hr'g Tr. 7/13/2005 at 14-15.)

23.    The written plea agreement provided that petitioner "understands that the United States Attorney reserves the right to file an information, pursuant to 21 U.S.C. § 851, stating prior convictions as a basis for increased punishment." (Plea Agreement (Doc. No. 311) at 2; Plea Hr'g Tr. 7/13/2005 at 14.)

24.    With regard to his appellate and collateral attack rights, petitioner specifically agreed to:

> waive[] the right to take a direct appeal from his conviction or sentence under 28 U.S.C. § 1291 or 18 U.S.C. § 3742, subject to the following exceptions:
>
> (a) If the United States appeals from the sentence, Steven Edward Scales may take a direct appeal from the sentence.
>
> (b) If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines, Steven Edward Scales may take a direct appeal from the sentence.
>
> The foregoing reservations of the right to appeal on the basis of specified issues do not include the right to raise issues other than those specified.
>
> Steven Edward Scales further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.

(Plea Agreement (Doc. No. 311) at 2-3; Plea Hr'g Tr. 7/13/2005 at 14-15.)

25.    Petitioner signed his initials at the bottom of each page of the plea agreement in the

presence of his attorney DePasquale.[2]  (Resp't's Facts ¶ 10; Evid. Hr'g Tr. 5/1/2008 at 73-75.)

DePasquale instructed petitioner on more than one occasion that by entering into the plea

agreement, he was waiving his appellate rights.  (Evid. Hr'g Tr. 5/1/2008 at 117, 121-22.)

26.     Petitioner also signed his initials on the page of the plea agreement that attributed to him

50 to 150 kilograms of cocaine.[3]  (Resp't's Facts ¶¶ 10, 19; Evid. Hr'g Tr. 5/1/2008 at 75.)

27.     Petitioner executed the acknowledgment on the final page of the plea agreement, which

provided that he read the agreement, discussed the agreement with counsel, and accepted the

agreement.  DePasquale witnessed petitioner's execution of the acknowledgment.  (Plea

Agreement (Doc. No. 311) at 5.)

28.     During the change of plea hearing, petitioner told the court he graduated from high

school.  (Plea Hr'g Tr. 7/13/2005 at 4.)  After attending Lawton High School in Lawton,

Oklahoma for eight months, petitioner graduated with a grade point average of 3.0.[4]  (Evid. Hr'g

Tr. 5/1/2008 at 27-28.)   The court asked petitioner whether he had any problems communicating

in English, to which he responded "No, ma'am, no problems."  The court then asked DePasquale

"Mr. DePasquale, have you had any problems communicating with the Defendant?"  DePasquale

answered "[n]ever, Your Honor."  (Plea Hr'g Tr. 7/13/2005 at 4.)

29.     During the change of plea hearing, this court questioned petitioner concerning his

counsel's performance:

---

[2] The copy of the plea agreement upon which petitioner placed his initials is not part of the record.  Nescott, however, showed petitioner a copy of the plea agreement, and petitioner admitted that each page of that copy contained his initials which he had placed on the plea agreement.  (Evid. Hr'g Tr. 5/1/2008 at 72-73.)

[3] See note 2 supra.

[4] Petitioner attended high school in Pittsburgh, Pennsylvania, but did not receive his diploma from that school because he lacked two credits.  (Evid. Hr'g Tr. 5/1/2008 at 27-28.)  It is not known whether the 3.0 grade point average that petitioner achieved at Lawton High School reflected the credits obtained at the secondary school in Pittsburgh.

> BY THE COURT:
>
> Q.    Do you – have you had ample opportunity to discuss your case with your attorney?
>
> A.    Yes, I have.
>
> Q.    Are you satisfied with the job he has done for you?
>
> A.    Yes, I am.

(Resp't's Facts ¶ 12; Plea Hr'g Tr. 7/13/2005 at 5.)

30.    During the colloquy with respect to petitioner's understanding about the written plea agreement, the court inquired about the petitioner's understanding concerning the right to appeal as follows:

> BY THE COURT:
>
> Q.    Do you also understand that after it has been determined what guideline range applies to your case, that the Court in certain circumstances may have the authority to impose a sentence that is more severe or less severe than that called for by the guidelines?
>
> A.    I understand.
>
> Q.    Do you also understand that the Government or you may have the right to appeal any sentence that this Court may impose?
>
> A.    Yes, I understand.

(Plea Hr'g Tr. 7/13/2005 at 10.)

31.    The court calculated the minimum and maximum penalties based upon the information the government filed on July 12, 2005.  The court informed petitioner about these penalties, and petitioner responded that he understood as follows:

> BY THE COURT:
>
> Q.    . . . [T]he Court has calculated the pertinent minimum and maximum possible penalties accordingly.

Do you understand, Mr. Scales, that the minimum penalty to Count 1 is a term of imprisonment of not less than 20 years and a term of supervised release of 10 years?

A.    I understand that.

Q.    Do you understand that the maximum penalty to Count 1 is a life term imprisonment, a life term of supervised release, and a fine of eight million dollars?

A.    I understand.

Q.    Do you further understand, Mr. Scales, that in addition to the maximum penalty that I have described for you, if the Court were to impose a term of imprisonment of more than one year at Count 1, the Court could impose a maximum life term of supervised release?

A.    I understand that.

Q.    Mr. Scales, do you understand that if you were to violate the terms of supervised release, the Court would revoke the supervised release, you would be incarcerated, and no credit would be given for the time you had previously served on the term of supervised release?

A.    Yes, I understand that.

Q.    Do you understand that the sentence imposed at Count 1 will include a special assessment of one hundred dollars pursuant to Title 18, United States Code, Section 3013?

A.    Yes.

(Plea Hr'g Tr. 7/13/2005 at 12.)

32.    Petitioner acknowledged that no one had made a threat to him that forced him to change his plea and now plead guilty.  (Plea Hr'g Tr. 7/13/2005 at 13.)

33.    Prior to the hearing petitioner reviewed the plea agreement with his counsel, and he reviewed the plea agreement again at the change of plea hearing before signing it.  (Plea Hr'g Tr.

7/13/2005 at 2; Evid. Hr'g Tr. 5/1/2008 at 91-92.)  At the hearing, Nescott summarized the terms

of the plea agreement for petitioner.  (Pet'r's Facts ¶ 54; Plea Hr'g Tr. 7/13/2005 at 14-16.)

34.     Nescott reviewed pertinent provisions from the plea agreement as follows:

> MR. NESCOTT: . . . The Government in the plea letter reserves
> the right to file a Section 851 information which, as the Court
> noted, it has filed in this case.
>      The Defendant waives any former or later – I'm sorry –
> how do I have that worded – he waives any former jeopardy or
> double jeopardy claims he may have as a result of the forfeitures or
> any other civil action; he waives the right to take a direct appeal
> under – except under narrow circumstances which are outlined in
> the plea letter; he waives the right to file any collateral challenges
> to his conviction and sentencing, including the right to file a 2255
> motion to vacate.
>          . . .
>
> THE COURT:  Mr. DePasquale, do you agree that Mr. Nescott has
> correctly stated the terms of the plea agreement?
>
> MR. DePASQUALE:  Yes.
>
> BY THE COURT:
> Q.     Mr. Scales, have you heard the terms of the plea agreement
>        that were reviewed for you by Mr. Nescott?
>
> A.      Yes, Your Honor, I heard it.
>
> Q.     Do you agree that Mr. Nescott has correctly stated the terms

of the plea agreement as you understand them?

> A.     Yes, I understand them.
>
> Q.     Did he state them the way that you understand them?
>
> A.     Yes, he stated like I understand.

(Pet'r's Facts ¶¶ 55 - 57; Resp't's Facts ¶¶ 13, 16; Plea Hr'g Tr. 7/13/2005 at 14-16.)

35.     Petitioner also acknowledged that no one had made any promises other than those made

in the plea agreement which induced him to plead guilty:

> BY THE COURT:
> Q.    Now, Mr. Scales, has anyone made any promise to you other than the promises made in the plea agreement which has induced you in any way to change your plea and plead guilty?
>
> A.    No, Your Honor.
>
> Q.    Has anyone made any prediction or promise to you as to what your actual sentence will be other than what you have been told as the minimum and maximum sentences?
>
> A.    No, Your Honor.
>
> Q.    Is there anything I have said today other than what I told you about the minimum and maximum sentence which suggests what your actual sentence will be, is there anything I have said?
>
> A.    No, everything – everything seems to be – to be pretty clear, what you said.

(Resp't's Facts ¶ 22; Plea Hr'g Tr. 7/13/2005 at 16.)

36.    Petitioner acknowledged at the change of plea hearing that he had not been instructed by anyone to respond untruthfully to any question concerning a promised sentence.  (Resp't's Facts ¶ 22; Plea Hr'g Tr. 7/13/2005 at 17.)

37.    Nescott reviewed paragraph C-2 of the plea agreement, which stated that the "quantity of controlled substance attributable to Steven Edwards Scales . . . is at least 50 kilograms but less than 150 kilograms of cocaine . . . ." (Plea Hr'g Tr. 7/13/2005 at 14-15.)

38.    Nescott described the government's evidence against petitioner and outlined petitioner's extensive role in the drug conspiracy:

> MR. NESCOTT:

The evidence that the Government is prepared to present would include testimony from Detective Michael Hudak of the Penn Hills Police and Roger Leonard of the Pennsylvania State Police – he's a trooper – and other witnesses whose testimony would be to the effect that between 2002 – January of 2002 – I'm sorry, January of 2000 and May of 2002 a cocaine conspiracy operated in the Western District of Pennsylvania.

Steven Scales was a supplier of cocaine to Bruno Cuzzocrea, who was the primary distributor of other individuals. The investigation began in 2001, actually, with the arrest of an individual who sold nine ounces of cocaine to an undercover officer in Scott Township, Allegheny County.

This individual then was approached to cooperate. He immediately named Bruno Cuzzocrea as his supplier; and then, working with police, he paid Cuzzocrea $8,000 to pay for those nine ounces. Thereafter there were seven controlled buys between this new informant and Cuzzocrea, in which Cuzzocrea sold him multiple ounces on each time between July of '01 and March of '02.

In March of 2002 state wiretaps began that were authorized on telephones linked to Bruno Cuzzocrea, Steven Scales, and Mark Wright. There were hundreds of telephone calls, mostly customers calling Cuzzocrea in code to set up their buys from him, but Steven Scales was also intercepted on more than sixty calls talking to Cuzzocrea about where they would meet and other coded conversations they had. There also were surveillances of some of these meetings between Scales, Cuzzocrea, and others.

The Government is prepared to prove that Mr. Scales in this conspiracy distributed at least 300 pounds of cocaine during the time of the conspiracy, which would all be within the stipulation and plea agreement of between 50 and 150 kilos.

By April the 29th of 2002, Bruno Cuzzocrea had set up a three kilogram deal over the telephone wiretaps with Steven Scales. The deal was set in code with Cuzzocrea making dinner reservations for three, meaning three kilos. Scales' car was observed parked across the street from 919 West Grant in Duquesne, which was an apartment in the name of Rebekah Crux, then his girlfriend, now his wife.

Late in the morning of the 29th of April Mr. Scales was seen. Again, his car was parked there and was seen coming out, gets into his car with a black gym bag. He was followed to New Kensington, where surveillance caught him meeting at Bruno Cuzzocrea's pizza shop.

Later that afternoon Cuzzocrea and Scales were followed to the parking lot at the Home Depot in Wilkins Township. There agents believe the transaction/exchange for the three kilos was made. They moved in on Cuzzocrea. He was stopped without incident. Inside his car was about three pounds – I'm sorry, three kilos of cocaine and $14,000 in cash and a set of scales.

Mr. Scales was – once the police tried to move in on him, he sped at a high rate of speed through the mall parking lots onto Route 22. He hit several other vehicles. He finally was stopped. Found inside his car was $46,040 in cash, about a half pound of cocaine, and an additional $2,141 in his pocket.

Later that day there were a series of searches that occurred. There was a search that occurred late in the afternoon, early evening at Mr. Scales' apartment at 22 Elliot Road in Monroeville. Seized from inside the apartment was $69,020 in cash, hidden inside an old Camaro inside a garage, $7,000 in cash taken from a bedroom, numerous guns and ammo, including a loaded .40 caliber Glock handgun by the front door – these guns were all registered to Rebekah Crux – a vacuum sealer used for packaging drugs.

Miss Crux was pulled up outside the apartment. She was driving Mr. Scales' Ford Expedition. The Expedition was searched. Found inside the Expedition was a loaded handgun registered to Miss Crux and also $4,960 in cash inside a woman's jacket in the back of the Expedition.

The final search occurred that evening at 919 West Grant in Duquesne, the apartment where Mr. Scales had been seen earlier in the day. It's an apartment that is registered – was listed in the name of Rebekah Crux, but there was current mail found for Mr. Scales inside. Also found inside was 3.4 kilos of cocaine inside the clothes dryer, $93,740 in cash in an attic safe, and other guns, and a ballistic vest.

That would be the Government's testimony in this case, Your Honor.

(Plea Hr'g Tr. 7/13/2005 at 17-21.)

39. The court questioned petitioner, "do you agree with the Government's summary of what you did?" Petitioner answered, "[y]es, I agree." The court then asked, "[d]o you still wish to plead guilty?" Petitioner answered, "[y]es ma'am, I do." (Pet'r's Facts ¶ 66; Resp't's Facts ¶ 19; Plea Hr'g Tr. 7/13/2005 at 21-22.)

40.     Petitioner's counsel, DePasquale, affirmed that the entry of a guilty plea by petitioner was consistent with his advice.  (Plea Hr'g Tr. 7/13/2005 at 22.)

41.     Petitioner had three prior convictions which could have been the subject of a section 851 information.  The government, however, filed a section 851 information regarding only one prior conviction.  The government did not include a second qualifying conviction in the section 851 information.  If the government had included a second qualifying conviction in the section 851 information, the minimum sentence for the offense to which petitioner pled guilty would have been a term of imprisonment for life.  Petitioner was also subject to prosecution in Kansas for other offenses, which, if convicted, he could have been subject to a mandatory life sentence. Although not stated in the written plea agreement, two of the benefits of that agreement were that petitioner would not be prosecuted in Kansas for those other offenses, and that the government would not file a second section 851 information to seek a mandatory sentence of life imprisonment.  (Pet'r's Facts ¶ 78; Resp't's Facts ¶ 25; Evid. Hr'g Tr. 5/1/2008 at 113-15.)

42.     The court does not find petitioner's testimony at the evidentiary hearing held on May 1, 2008 to be credible.  His repeated claims of not understanding or not knowing critical details about his guilty plea, and of statements allegedly being made to induce his guilty plea are thoroughly rebutted by the record of the change of plea hearing, by the written plea agreement signed by petitioner, and by the record of the evidentiary hearing concerning petitioner's motion, including the testimony of DePasquale.

### D. Petitioner's sentencing

43.     Petitioner was sentenced by this court on November 13, 2005.  (Pet'r's Facts ¶ 12.)

44.     Nescott recommended to the court an additional one-point reduction in the calculation of petitioner's advisory United States Sentencing Guideline range.  Nescott had discretion to not recommend to the extra one-point reduction to the sentencing judge.  When motions to suppress were pursued, the government might or might not recommend the reduction, depending on the circumstances.  (Evid. Hr'g Tr. 5/1/2008 at 121.)

45.     At the sentencing hearing, the court asked DePasquale if there were any comments he would like to make.  DePasquale requested a downward departure from the guideline range that was applicable to petitioner under the United States Sentencing Guidelines:

> MR. DePASQUALE:
>     [Petitioner] is 35 years old.  He obviously is facing a mandatory sentence of 20 years.  The guidelines, as the Court has noted, are no longer mandatory.  They're, in fact, only advisory.  The guideline minimum range, in fact, exceeds in this case the mandatory minimum.  We're asking the Court to sentence at the mandatory minimum.  I think this would be a case, given the tender years of the defendant in his previous criminal history, and given the fact that the previous involvement with drugs was street-level drug dealing, it was wrong obviously, but not of a significant – not as a significant drug trafficker.  This offense is a significant offense, but I still think where there is no mandatory, that there would be latitude for a significant departure from the guideline range.  What we're asking is that you do depart from the guideline range at least down to the mandatory minimum.

(Sent. Tr. 10/13/2005 at 13.)

46.     Petitioner was sentenced by the court to a term of imprisonment of 262 months, which was the low end of the applicable guideline range.  (Pet'r's Facts ¶ 73; Resp't's Facts ¶ 3.)

47.     At the conclusion of the sentencing hearing, the court advised petitioner about the right to appeal as follows:

> THE COURT:

> Mr. Scales, you can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary, or if there's some other fundamental defect in the proceedings that was not waived by your guilty plea. You also have a statutory right to appeal your sentence under certain circumstances, particularly, if you think the sentence is contrary to law.
>
> With few exceptions, any notice of appeal must be filed within ten days of judgment being entered in your case. If you are unable to pay the costs of an appeal, you may apply for leave to appeal in forma pauperis. If you so request, the Clerk of the Court will prepare and file a notice of appeal on your behalf.
>
> Mr. Scales, do you understand those appeal rights?
>
> THE DEFENDANT: Yes, I do, Your Honor.

(Sent. Tr. 10/13/2005 at 26.)

48.     Petitioner informed his counsel after sentencing that he wanted to appeal his sentence. (Pet'r's Facts ¶ 74; Resp't's Facts ¶ 27; Evid. Hr'g Tr. 5/1/2008 at 98-99.) DePasquale told petitioner that an appeal was not in his best interests, because if he went to trial, he would face mandatory life imprisonment. (Evid. Hr'g Tr. 5/1/2008 at 99.)

49.     DePasquale sent petitioner a letter dated that same day, October 13, 2005, advising petitioner that he would continue to work on petitioner's case for a Rule 35(b) reduction of sentence. In the letter, DePasquale also advised petitioner that he believed there was no legal basis for an appeal, and for that reason he would not file an appeal. DePasquale wrote:

> If you still wish to appeal, which I advise against, as Judge Conti informed you at sentencing, you must notify the Clerk of Court for the Federal District Court of Western Pennsylvania by Monday October 24, 2005. The address and telephone number is as follows: Clerk of Courts, U.S. Post Office and Courthouse, Seventh Avenue and Grant Street, Suite 311, Pittsburgh, PA 15219, 412-208-7500.

(Resp't's Facts ¶ 27; Evid. Hr'g Tr. 5/1/2008 at 98-99; Gov't Ex. 3, Evid Hr'g 5/1/2008.)

Petitioner did not notify the clerk of court that he wished to appeal.

## IV. Analysis

### A. Waiver of Right to File 28 U.S.C. § 2255 Motion

1.      The government argues that petitioner "waive[d] the right to file a motion to vacate

sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence" in the plea agreement

that he signed.  Plea Agreement (Doc. No. 311) at 2-3.  The government emphasizes that

petitioner read and reviewed the agreement with counsel, understood the content of the

agreement, and acknowledged that he voluntarily signed it.  Petitioner, on the other hand, argues

that he did not knowingly and voluntarily waive the right to file a section 2255 motion.

2.      Criminal defendants may waive the right to file a motion to vacate, set aside, or correct a

sentence under 28 U.S.C. § 2255.  The waiver, however, will be enforced only if it is knowing

and voluntary.  United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008); United States v. Clive,

No 05-0383, 2008 WL 3889726 at *6-7 (W.D. Pa. Aug. 19, 2008).  If the waiver is enforceable,

the court refrains from exercising subject-matter jurisdiction to consider the merits of the motion,

unless the result would work a miscarriage of justice.  United States v. Khattak, 273 F.3d 557,

558, 563 (3d Cir. 2001); Mabry, 536 F.3d at 237 n.4.  A valid waiver bars consideration of the

merits of ineffective assistance of counsel claims raised in a section 2255 motion.  Mabry, 536

F.3d at 239-41.

3.      Federal Rule of Criminal Procedure 11(b)(1)(N) requires the court, not the government or

defense counsel, to address the defendant in a plea hearing and inform him that he is waiving the

right to appeal and to collaterally attack his sentence with a section 2255 motion.  It provides in

pertinent part:

> Before the court accepts a plea of guilty . . . the court must address
> the defendant personally in open court.  During this address, the
> court must inform the defendant of, and determine that the
> defendant understands, the following: . . . (N) the terms of any
> plea-agreement provision waiving the right to appeal or to
> collaterally attack the sentence.

A defendant claiming that a waiver should be unenforceable due to an inadequate plea hearing colloquy has the burden of satisfying the plain error standard.  United States v. Goodson, 544 F.3d 529, 539 (3d Cir. 2008).  To satisfy this burden, the defendant must prove "(1) error, (2) that is plain and obvious, and (3) that affects a defendant's substantial rights."  Id. (citing Johnson v. United States, 520 U.S. 461, 467 (1997); United States v. Olano, 507 U.S. 725, 732 (1993)).

4.      In Goodson, the defendant and the government entered into a plea agreement, in which the defendant agreed, inter alia, (1) to plead guilty to one count of wire fraud, (2) waive his right to indictment and plead guilty to two counts of an information charging him with making counterfeit checks, and (3) waive his right to take an appeal from his conviction or sentence and his right to attack collaterally his sentence.  The defendant executed an acknowledgment on the final page of the plea agreement, indicating that he read the agreement, discussed it with counsel, and accepted its terms.  His counsel witnessed his execution of the acknowledgment.  Id. at 531-32.  On the next day, a change of plea hearing was held.  At the hearing, the court noted the existence of the plea agreement, and asked the government to review the provisions of the agreement.  The Assistant United States Attorney stated:

> There is a waiver provision in the plea agreement that deals with
> him waiving his right to take a direct appeal from his conviction.
> There are certain exceptions that are specified in the plea
> agreement which would permit him to take an appeal under those

23

circumstances.  He also agrees to the waiver of his right to file a 28
U.S.C. § 2255 motion.

After the statement, the judge asked the defendant if he heard the government's summary of the

terms of the agreement.  The defendant responded affirmatively, and the court then asked if he

understood the statement.  The defendant again responded affirmatively.  Id. at 532.  Later in the

hearing, the judge asked:

> Court: Do you understand that under certain circumstances, this
> relates to what you have given up in the plea agreement, you or the
> government may have the right to appeal any sentence that I may
> impose?
>
> Defendant: Yes, your honor.

Id.  At the conclusion of the hearing, the defendant pled guilty to the charges.  The judge found

the pleas were knowing and voluntary.  After the court sentenced him to 27 months of

imprisonment, the defendant timely appealed.  The government responded that the defendant

knowingly waived his right to appeal his sentence.  Id. at 532-33.

5.      The Court of Appeals for the Third Circuit considered the entire record in Goodson, and

held that the district court's reliance on the government to recite the terms of the plea agreement,

including the appellate waiver, was obvious error in light of the requirements of Rule 11(b)(1)(N)

that mandate the judge inform the defendant about those terms of the agreement relating to the

waiver of the right to appeal and collaterally to attack the sentence.  Id. at 539.  The court of

appeals also held that the district court plainly erred in failing to verify that the defendant

understood the breadth of the waiver and the various exceptions provided for by the plea

agreement.  Id.  Despite the obvious errors, the court of appeals held that the defendant failed to

meet his burden of demonstrating the third element of the plain error rule: "that the deficient

colloquy affected his substantial rights by precluding him from knowing of and understanding the significance of the binding appellate waiver in the plea agreement." Id. at 540. The court of appeals noted evidence that the defendant was college educated, he successfully perpetrated fraud, he could read and comprehend the plea letter and its terms, the district court discussed the possible punishment at the plea hearing, the government discussed the appellate waiver in general terms at the plea hearing, and he told the court that he understood his right to appeal was limited. The court of appeals also emphasized that the defendant signed the acknowledgment on the final page of the plea agreement. The court of appeals concluded that under the circumstances, the defendant did not meet his burden of proving his substantial rights were affected. Id. at 541.

6.      The Rule 11 colloquy in this case was not adequate for the same reasons as set forth in Goodson. The district court here relied on the government to explain the terms of the plea agreement, including the provisions with respect to waiver of appellate rights and the right to attack collaterally a sentence. The district court did not personally address petitioner regarding these rights, did not specifically ask if he understood the waiver of these rights, and did not verify whether he understood the breadth of the waiver and the exceptions. Under these circumstances, there is plain and obvious error in light of the requirements of Rule 11(b)(1)(N).

7.      This case is also similar to Goodson, however, in that the evidence demonstrates that petitioner's substantial rights were not affected by the inadequate colloquy. Although petitioner was not college educated and during the plea hearing colloquy the court stated petitioner "may" have the right to appeal, without making specific reference to his appellate waiver as the district court did in Goodson, the court concludes that petitioner did not meet his burden of

demonstrating that the deficient colloquy affected his substantial rights by precluding him from knowing of and understanding the waiver of his right to file a section 2255 motion. Here, petitioner graduated from high school, petitioner could communicate in English, petitioner was a major drug supplier, DePasquale explained the contents of the plea agreement to petitioner prior to execution of the agreement, DePasquale had petitioner read the agreement prior to execution, DePasquale answered petitioner's questions with respect to the agreement prior to execution, petitioner disclosed to the court at the change of plea hearing that he entered into a plea agreement with the government, the government reviewed the terms of the plea agreement at the hearing including the specific provision that petitioner waived the right to file a section 2255 motion, both petitioner and his counsel told the court at the hearing that the government correctly stated the terms of the agreement, and petitioner told the court at the hearing that he understood the terms of the agreement. Petitioner initialed each page of the plea agreement, including the page containing the waiver. Petitioner executed the plea agreement's acknowledgment prior to the change of plea hearing, and DePasquale witnessed petitioner's execution of the acknowledgment. DePasquale also explained to petitioner on multiple occasions that if he entered into the plea agreement he waived the right to file a section 2255 motion. In light of the circumstances, petitioner failed to meet his burden of proving that the deficient Rule 11 colloquy precluded him from understanding he had the right to file a section 2255 motion and that he agreed to waive this right. The waiver is therefore enforceable, as long as enforcement does not amount to miscarriage of justice.

8.      The court looks to the underlying facts to determine whether enforcing the waiver would give rise to a miscarriage of justice. <u>Mabry</u>, 536 F.3d at 243. Relevant factors include "the

clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." Mabry, 536 F.3d at 242-43 (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

9.     In Mabry, the defendant filed a section 2255 motion, although he waived the right to appeal and attack collaterally a sentence pursuant to a plea agreement. In the motion, the defendant argued that he was provided with ineffective assistance of counsel. The defendant asserted that he instructed his attorney to challenge the calculation of his sentence under the Sentencing Guidelines on appeal. The attorney did not appeal the defendant's sentence, despite the request to do so. Mabry, 536 F.3d at 233-35. The court of appeals determined that the defendant's waiver of his right to appeal and challenge collaterally his sentence was knowing and voluntary. Id. at 237-39. The court of appeals analyzed whether the waiver barred consideration of his section 2255 motion and precluded relief on the merits of his claim that defense counsel rendered ineffective assistance of counsel by failing to appeal despite being instructed to do so. The Court of Appeals for the Third Circuit observed that a majority of the other courts of appeals, with the exception of the Court of Appeals for the Seventh Circuit, recognized a presumption of prejudice where counsel fails to file a requested appeal, despite a waiver of appellate rights. Id. at 239-40; see Campusano v. United States, 442 F.3d 770 (2d Cir. 2006); United States v. Tapp, 491 F.3d 263 (5th Cir. 2007); United States v. Sandoval-Lopez, 409 F.3d 1193, 1195-99 (9th Cir. 2005); United States v. Garrett, 402 F.3d 1262 (10th Cir. 2005); Gomez-Diaz v. United States, 433 F.3d 788, 791-94 (11th Cir. 2005); but see Nunez v. United States,

495 F.3d 544 (7th Cir. 2007), <u>vacated on other grounds</u>, 128 S.Ct. 2990 (2008).  The Court of

Appeals for the Third Circuit, however, found the reasoning of the majority's decisions to be

flawed.  <u>Mabry</u>, 536 F.3d at 240.  The Court of Appeals for the Third Circuit believed that a

presumption of prejudice amounting to a miscarriage of justice should not apply in situations

where defense counsel's action of filing an appeal would violate the plea agreement, because

once the appeal is filed, the government is relieved of its obligations to the defendant.  <u>Id.</u> at 240-

41.  Defense counsel's appeal "could cost the client the benefit of the plea bargain" and be

against the client's best interests.  <u>Id.</u>  The court of appeals held that a defendant who has waived

the right to file a section 2255 motion cannot bring such a motion unless the waiver was (1) not

knowing and voluntary, or (2) enforcement of the waiver would work a miscarriage of justice.

<u>Id.</u>  Miscarriage of justice and prejudice are not presumed where a defendant waived the right to

attack collaterally a sentence.  <u>Id.</u> at 242.

10.     The court of appeals in <u>Mabry</u> analyzed whether the facts of the case demonstrated the

defendant suffered a miscarriage of justice.  <u>Id.</u> at 243-44.  The court of appeals referred to its

statement in <u>United States v. Wilson</u>, 429 F.3d 455 (3d Cir. 2005), that when a plea agreement is

the product of coercion, enforcing a waiver in that agreement would work a miscarriage of

justice.  <u>Mabry</u>, 536 F.3d at 243.  The court of appeals determined that the defendant in <u>Mabry</u>

was not coerced into entering the plea agreement.  The court of appeals explained its holding in

<u>United States v. Shedrick</u>, 493 F.3d 292, 303 (3d Cir. 2007), that the enforcement of a waiver

barring an ineffective assistance of counsel claim on collateral attack would have resulted in a

miscarriage of justice.  In <u>Shedrick</u>, the defense counsel refused the defendant's request to pursue

an appeal on the ground that the sentencing court erroneously departed upward from the

applicable Sentencing Guideline range, and the defendant specifically retained the right to appeal

a sentence in which the sentencing court erroneously departed upward.  Mabry, 536 F.3d at 243.

The court of appeals concluded that the defendant in Mabry did not suffer a miscarriage of justice

by the attorney's failure to appeal, since the defendant requested his counsel appeal the

calculation of the defendant's sentence under the Sentencing Guidelines, and the waiver barred

the right to appeal the calculation.  Id.  The court of appeals in Mabry noted that although the

waiver seemed "particularly one-sided and unusually broad," the government agreed to not

pursue a mandatory consecutive term of imprisonment of five years in consideration for the

provisions of the plea agreement.  Id. at 243 n.16.  Based on the circumstances of the case, the

court of appeals concluded that "[e]nforcing the waiver is in line with justice, not a miscarriage

of it."  Id. at 244.

11.      In this case, enforcing the waiver of the right to file to a section 2255 motion does not

work a miscarriage of justice on petitioner.  For reasons already mentioned, petitioner entered the

plea agreement knowingly and voluntarily, and petitioner was not coerced into entering the

agreement.[5]  Petitioner waived the right to appeal his conviction with limited exceptions:

petitioner only retained the right to appeal his sentence if the government appealed the sentence,

or if the sentence exceeded the statutory limits or unreasonably exceeded the applicable guideline

range under the Sentencing Guidelines.  Petitioner argues that he told DePasquale to appeal

because he was promised that: (1) the government would not file a section 851 information or

seek an enhanced sentence, (2) the amount of cocaine attributed to him would not exceed 18

_____

[5]See Part (C)(3) for further discussion on the issue whether petitioner's waiver was coerced.

kilograms, and (3) his sentence would not exceed twenty years. Petitioner, however, waived the right to appeal those issues. Similar to Mabry and distinguishable from Shedrick, DePasquale's failure to appeal did not work a miscarriage of justice because petitioner did not request his attorney to appeal on one of the permitted grounds under the plea agreement. Furthermore, petitioner received valuable consideration for the broad waiver, as the defendant did in Mabry. Here, the government did not seek a mandatory life term of imprisonment, and did not pursue the charges filed in Kansas against petitioner, for which he also faced life imprisonment. The government also recommended to the court that petitioner receive an extra one-point deduction in calculating the applicable guideline range, even though a motion to suppress was unsuccessfully pursued by petitioner. In summary, petitioner knowingly and voluntarily waived his right to file a section 2255 motion pursuant to the plea agreement, and enforcement of the waiver would not cause petitioner to suffer a miscarriage of justice.

12. Even though petitioner's waiver of his right to file a section 2255 motion is enforceable and the court refrains from exercising subject-matter jurisdiction, the court nonetheless will analyze petitioner's claims. Even if this court had subject-matter jurisdiction, petitioner would not be entitled to relief on the merits.


### B. Jurisdiction to Impose an Enhanced Sentence

13. Petitioner argues that the government failed to comply with the provisions of 21 U.S.C. § 851. Petitioner argues that pursuant to the plea agreement, the government reserved the right to seek an enhanced penalty, but the government did not timely file an information or serve it upon petitioner or petitioner's counsel as required by the statute. Petitioner argues that because the

government failed to comply with the statutory requirements, the court was without authority to enhance petitioner's sentence by reason of prior convictions.

14.     21 U.S.C. § 851(a)(1)  provides:

> No person who stands convicted of an offense under [21 U.S.C. §§ 841 *et seq.*] shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. . . .

15.     In this case, the government reserved the right to file a section 851 information in the plea agreement, and the government acted upon this right by filing an information on July 12, 2005, the day before the hearing.  The government also served the information upon DePasquale, who was petitioner's counsel, before the hearing began on July 13, 2005.  Filing the information on the day before the hearing and serving the information prior to the hearing satisfy the requirements of section 851.

16.     In United States v. Weaver, 905 F.2d 1466 (11th Cir. 1990), the Court of Appeals for the Eleventh Circuit considered whether section 851 was satisfied where the defendant was personally served with the information immediately prior to the start of trial and the government informed the court it would file an information, even though the information was not filed or docketed until after trial began.  In that case, the defendant's counsel was personally served on the day trial began, prior to the selection of the jury.  Also prior to jury selection, the government notified the court on the record "[j]ust as a housekeeping matter, also the government is filing an information on [the defendant], notice of a prior conviction, in order to double the maximum penalty.  Defense counsel and [the defendant] have received a copy."  Id. at 1481.  The

information was not filed or docketed, however, until four days after the start of trial. The Court of Appeals for the Eleventh Circuit held that the government complied with the strict requirements of section 851 by personally serving the defendant and his counsel with a copy of the information prior to trial, even though the information was not filed with the court before trial. Id. at 1480-82.

17.     In United States v. Severino, 316 F.3d 939 (9th Cir. 2003), the Court of Appeals for the Ninth Circuit considered the issue whether a section 851 information was timely filed and served, when service of the information was mailed, but not received, before the plea hearing. In that case, the plea hearing was held in Anchorage, Alaska, with the Assistant United States Attorney appearing by telephone from Fairbanks, Alaska. Before the hearing took place that day, the government filed in the Fairbanks federal courthouse an information alleging that the defendant had a prior felony drug conviction. The defendant did not receive the information until after the hearing. Nonetheless, the defendant and his counsel were aware that the prior drug conviction would be raised at the plea hearing, and they did not challenge the prior conviction, object to the adequacy of notice, or ask for a recess or continuance to discuss the matter at the time of the hearing.

18.     In Severino, the Court of Appeals for the Ninth Circuit noted that although section 851 requires the information to be filed and served before the plea hearing, Federal Rule of Criminal Procedure 49(b) provides that "service" is to be made in accordance with civil rules. Federal Rule of Civil Procedure 5(b)(2)(B) provides "[s]ervice by mail is complete on mailing." The court of appeals held that service by the government in the case was completed upon mailing the information. The court of appeals further explained that although the statutory requirement of

service was satisfied, the constitutional requirement of adequate notice was not necessarily satisfied. The court of appeals held that the government's notice satisfied the requirements under the particular circumstances, because the defendant and his counsel were aware in advance that the drug conviction would be raised.

19.    Other courts considering the issue have held similarly to <u>Severino</u>. <u>See</u> <u>United States v. Kennedy</u>, 133 F.3d 53, 59 (D.C. Cir. 1998) (service of an information is timely under section 851, if placed into the hands of the postal service prior to trial); <u>United States v. White</u>, 980 F.2d 836, 840 n.8 (2d Cir. 1992) (section 851 is satisfied where the defendant received service of the information after the commencement of trial, as long as service was mailed prior to trial).

20.    In this case, DePasquale visited petitioner in jail prior to the hearing on petitioner's waiver of jury trial and entry of guilty plea and reviewed the terms of the plea agreement, which included a term that provided the government the right to file a section 851 information. The government electronically filed a section 851 information on July 12, 2005 regarding petitioner's prior felony conviction on August 19, 1990 in the Court of Common Pleas of Allegheny County for a violation of the Controlled Substance, Drug, Device and Cosmetic Act, Possession with Intent to Deliver.[6]  The government personally served petitioner's counsel with the information the following day at the hearing on petitioner's waiver of jury trial and entry of guilty plea. At the change of plea hearing, the court on the record, prior to petitioner entering his guilty plea, informed petitioner that the section 851 information was filed, and informed him about the conviction that the government was relying upon in seeking a sentencing enhancement.

---

[6] In <u>United States v. Rivas</u>, 493 F.3d 131 (3d Cir. 2007), the Court of Appeals for the Third Circuit noted that "Section 851(a)(1) does not define 'file[],' but . . . it incorporates by reference federal and local rules governing filing." <u>Id.</u> at 141. The relevant local rules in the <u>Rivas</u> case permitted electronic filing. Compliance with those local rules satisfied the requirements of section 851.

21.     The government in this case complied with the requirements of section 851.  In <u>Severino</u>, filing and service were held to comply with the requirements of section 851, when the information was filed the morning of the plea hearing, but the defendant did not receive the information until after hearing.  Here, the information was filed the day before the hearing, and petitioner's counsel received a copy of the information at the hearing.  In <u>Weaver</u>, filing and service were held to comply with the requirements of section 851, when the information was personally served upon the defendant the day of the plea hearing, although the government did not file the information until several days later.  Again, the information here was personally served upon DePasquale at the hearing prior to the entry of the guilty plea similar to <u>Weaver</u>, and the government in this case electronically filed the information the day before the plea hearing in accordance with Local Rule 5.4, which provides that documents "may be filed, signed and verified by electronic means . . . ."  W.D.PA.LR. 5.4.  In addition, Local Rule 5.5 provides that documents "may be served through the court's transmission facilities by electronic means . . . ."  W.D.PA.LR. 5.5.


### C. Ineffective Assistance of Counsel Claims

22.     To establish ineffective assistance of counsel in violation of the Sixth Amendment, petitioner must prove (1) deficient representation, meaning that counsel's representation fell below an objective standard of reasonableness; and (2) prejudice, meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91 (2000); <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 694 (1984).

23.     Concerning the prejudice prong, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." Williams, 529 U.S. at 390-91.  In the case of ineffective assistance at sentencing, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney.  Glover v. United States, 531 U.S. 198, 200, 203-04 (2001). A movant arguing ineffective assistance at a hearing must show that counsel's deficiencies at the hearing created a reasonable probability that, but for the deficient performance, the outcome of the hearing would have been different.  Strickland, 466 U.S. at 691-92.

24.     The United States Court of Appeals for the Third Circuit directed courts to address the prejudice prong of the analysis first.  See McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir. 1993), cert. denied, 510 U.S. 1028 (1993) ("Indeed, this Court has read Strickland as requiring the courts to decide first whether the assumed deficient conduct of counsel prejudiced the defendant.") (internal quotations and citations omitted).  The court of appeals in McAleese noted that Strickland itself recognized that

> a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697.  The court, therefore, will examine the prejudice prong of the Strickland analysis before considering the deficient representation prong.

25.     "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690.  "Because

advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected . . . if they are based on professional judgment." Strickland, 466 U.S. at 681. "The Supreme Court directs that our 'scrutiny of counsel's performance must be highly deferential' to avoid holding counsel incompetent because of reasonable strategic or tactical judgments which, with the benefit of tactical hindsight, might prove not to have best served his client's interests." United States v. Loughery, 908 F.2d 1014, 1018 (D.C. Cir. 1990) (quoting Strickland, 466 U.S. at 689).

26.     Petitioner argues four bases for ineffective assistance of counsel: (1) his counsel's failure to object to a defect in the section 851 information, (2) his counsel's failure to seek a downward departure under the Sentencing Guidelines, relating to his career offender status, (3) his counsel making false promises with respect to his sentence, and (4) his counsel's failure to file an appeal. Each of these bases will be addressed.

### 1. Failure to Object to Defect in the Information

27.     Petitioner asserts that his counsel was ineffective because he failed to object to the alleged defect in the section 851 information.   Petitioner argues that counsel should have objected for the reason that the section 851 information was untimely filed, and therefore the information could not have been the basis for an enhanced sentence.

28.     In Severino, the defendant also argued that his counsel was constitutionally defective because counsel failed to object to the adequacy of the information.  The Court of Appeals for the Ninth Circuit stated:

> Because we hold the information satisfied § 851(a), [the
> defendant]'s ineffective assistance claim, to the extent that it relies
> on counsel's failure to object to the information, necessarily fails:

> There can be no error in failing to object to an adequate information.

Severino, 316 F.3d at 948.

29.     As already determined in this case, the section 851 information was adequate since it was timely filed and served.  For that reason, DePasqaule's failure to object does not render his counsel ineffective.

30.     Petitioner also argues that even if the information can be considered timely served, counsel was ineffective in failing to provide him with a copy and notify him about the government's intent to seek the enhanced sentence based on the information.  Petitioner asserts that in discussing whether to accept the plea agreement, DePasquale assured petitioner that the government would not file an information.

31.     Petitioner's argument is factually incorrect.  Petitioner was aware prior to the hearing on his waiver of right to jury trial and entry of guilty plea that the information was filed. DePasquale did not assure petitioner that the government would not file an information.

## 2. Failure to Object to Career Offender Status

32.     Petitioner argues that counsel was ineffective in failing to seek a downward departure under the Guidelines.  Petitioner asserts that DePasquale should have argued that the career offender status over-represented petitioner's criminal history.  Petitioner notes the prior offenses were close in time and involved relatively small amounts of cocaine.

33.     This argument is factually incorrect as well.  At the sentencing hearing, DePasquale requested a downward departure based upon the career offender status over-representing petitioner's criminal history.  DePasquale argued that the career offender status over-represented

petitioner's history, because the offenses relied upon happened many years ago during petitioner's "tender years," and the offenses were relatively insignificant in comparison to the current offense. Despite DePasquale's arguments, the court did not depart downward. Prejudice cannot be found under those circumstances.

### 3. False Promises

34.    Petitioner asserts that his counsel was ineffective for inducing him to enter a guilty plea by making false promises. Petitioner argues that in discussing his options, DePasquale assured him that the amount of cocaine attributable to him at sentencing would not exceed 18 kilograms, that the government would not file a section 851 information, and that his sentence would not exceed twenty years.

35.    "A guilty plea, if induced by promises . . . which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." Machibroda v. United States, 368 U.S. 487, 493 (1962). Counsel's inaccurate prediction of a sentence that a defendant may receive does not amount to ineffective assistance, if during the plea colloquy the court informs the defendant of his maximum potential sentence, and the defendant acknowledges that maximum sentence. United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007); Masciola v. United States, 469 F.2d 1057, 1059 (3d Cir. 1972). In contrast, a gross mischaracterization of the likely outcome amounts to ineffective assistance of counsel, Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986), as does an actual promise of a particular sentence, United States v. Marzgliano, 588 F.2d 395 (3d Cir. 1978).

36.    In this case, petitioner knowingly and voluntarily acknowledged his guilt. Petitioner executed the acknowledgment of the plea agreement, indicating he read, discussed, and accepted

its terms.  The plea agreement included a provision stating petitioner's role in the conspiracy, including the amount of cocaine to be attributed to his actions in the conspiracy.  The plea agreement included terms advising petitioner that the government reserved the right to file a section 851 information and advising that his term of imprisonment would be "not less than twenty (20) years and not more than life."  Plea Agreement (Doc. No. 311) at 4.  Petitioner responded, under oath, that no other promises than those contained in the plea agreement were made to him to induce his plea.  He also said under oath that he understood the mandatory minimum twenty-year penalty and maximum penalty of life imprisonment.

37.     Here, DePasquale did not assure petitioner that the amount of cocaine attributable to him at sentencing would not exceed 18 kilograms, that the government would not file a section 851 information, or that his sentence would not exceed twenty years.  DePasquale's explanation of the sentencing guidelines and the potential sentence was accurate, and petitioner knew and understood the potential sentence he could receive.  Petitioner's guilty plea was not induced by false promises.

### 4. Failure to Appeal

38.     Petitioner asserts that his counsel was ineffective for failing to file an appeal, after petitioner requested that counsel do so.  Petitioner requested that DePasquale file an appeal immediately after petitioner was sentenced, on the ground that the decision to plead was based upon false promises.  DePasquale sent petitioner a letter that informed petitioner of the steps needed to be taken in order to file an appeal, but DePasquale stated he would not file the appeal himself.

39.     The Mabry decision considered ineffective assistance of counsel claims in the context of

a waiver of the right to file an appeal or collateral attack. When such a waiver exists, the attorney's failure to file a requested appeal is not necessarily ineffective assistance of counsel; failure to file an appeal only rises to the level of a constitutional violation if the waiver was not knowing and voluntarily or if enforcement of the waiver would work a miscarriage of justice. Mabry, 536 F.3d at 240. The court specifically noted that failing to file an appeal would not work a miscarriage of justice when doing so would violate the plea agreement, since filing the appeal could harm the client. Id. at 240-41. For the reasons discussed with respect to the waiver of the right to file a section 2255 motion, DePasquale's failure to file an appeal was not ineffective assistance of counsel.

40.     Even if the waiver in petitioner's plea agreement was unenforceable, there are decisions supporting the conclusion that DePasquale's conduct was not ineffective assistance of counsel. In the context where there is no enforceable waiver of the right to appeal, an attorney's failure to perfect an appeal after the client has instructed the attorney to do so constitutes ineffective assistance of counsel. Rodriquez v. United States, 395 U.S. 327, 328-29 (1969). Prejudice in those circumstances is generally presumed when an attorney fails to appeal after the client instructs the attorney to do so. Roe v. Flores-Ortega, 528 U.S. 470, 485 (2000). Prejudice, however, is not always presumed. When an attorney sends a letter to the client instructing the client how to perfect the appeal on his own, even after the client has requested an appeal, that conduct may not rise to the level of constitutionally deficient assistance of counsel. See United States v. Piggee, No. 96-6111, 1997 WL 199195 (10th Cir. Apr. 24, 1997) (decision is cited for

its persuasive value)[7]; <u>United States v. Grier</u>, No. 00-356-02, 2002 WL 32355609 (E.D. Pa. Aug. 23, 2002).

41.     In <u>Piggee</u>, a defendant was sentenced to a term of imprisonment of 210 months for conspiring to distribute crack cocaine. <u>Id.</u> at *1. The defendant requested his attorney, to whom he paid over $15,000, to take an appeal. In response, the attorney sent a letter to the defendant reminding him of the deadline for filing a notice of appeal, and stating that he could retain counsel if he wished. The attorney attested that he was hired for trial court proceedings only, and that his representation terminated after sentencing. <u>Id.</u> The defendant filed a section 2255 motion, arguing, inter alia, that he was denied effective assistance of counsel on appeal. <u>Id.</u> at *2. The Court of Appeals for the Tenth Circuit held that the defendant failed to show cause and prejudice, despite the defendant's argument that ineffective assistance of counsel itself established cause. <u>Id.</u> The court of appeals pointed to the defendant's knowing and voluntary guilty plea, his awareness of the right to appeal, and knowledge that no appeal had been filed prior to the deadline. Notwithstanding these circumstances, the defendant failed to file a notice of appeal on his own. The court of appeals held that the challenge to his conviction was procedurally barred by his failure to file timely a direct appeal. <u>Id.</u>

42.     The dissent in <u>Piggee</u> argued that failure to perfect the requested appeal, in and of itself,

---

[7] The <u>Piggee</u> decision was not published. Rule 32.1(A) of the rules adopted by the Court of Appeals for the Tenth Circuit, effective January 1, 2008, provides "[t]he citation of unpublished decisions is permitted to the full extent of the authority found in [Federal Rule of Appellate Procedure] 32.1. Unpublished decisions are not precedential, but may be cited for their persuasive value." 10TH CIR. R. 32.1(A). Federal Rule of Appellate Procedure 32.1(a) provides "[a] court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'nonprecedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007." FED. R. APP. P. 32.1(a). Rule 32.1(C) of the rules adopted by the Court of Appeals for the Tenth Circuit provides that "[p]arties may cite unpublished decisions issued prior to January 1, 2007, in the same manner and under the same circumstances as are allowed by Fed. R. App. P. 32.1(a)(i) and part (A) of this local rule." 10TH CIR. R. 32.1(C).

constituted ineffective assistance of counsel.  Id. at *2.  The dissent noted that ineffective

assistance of counsel provides cause to excuse a procedural default, and where an attorney's

ineffective assistance is the reason that an appeal is not filed, prejudice is presumed.  Id. at *2-3.

The majority viewed that the unique circumstances of the case warranted treating the defendant's

claim differently than a typical ineffective assistance claim based on an unfulfilled request to file

an appeal.

43.     In Grier, a defendant was sentenced to a term of imprisonment of 144 months after

pleading guilty to ten counts of firearm-related offenses.  Grier, 2002 WL 32355609 at *1.

Immediately after the sentence was imposed, the defendant told his attorney he wanted to appeal.

The attorney told the defendant that he did not think the defendant had any basis to appeal.  Id.

The attorney wrote a letter to the defendant explaining:

> Please find enclosed a copy of your sentencing sheet and a
> copy of the notice of appeal and the financial affidavit you need to
> complete to have counsel appointed.  Please think long and hard
> before you begin this process and look at your case as a whole and
> not focus on the isolated incidents as you have a tendency to do.  I
> know the time you received is much more than you could have ever
> contemplated, but your issues for appeal only have to do with the
> enhancements.  Can you refute all the evidence that the
> government has against you.  Read your case as a whole and then
> make that determination.
>
> As I have already explained to you I do not believe that you
> have any issues that would warrant an appeal, however, you may
> find a lawyer who will review the evidence and see it in a different
> light.
>
> If I can be of any further assistance or give you any
> additional advise [sic] I am only a phone call or a letter away. Take
> care.

Id. at *1-2.  After receiving the letter, the defendant filled out the financial affidavit and waited to

hear from a new attorney. Id. at *2. The defendant contacted his former counsel three months later asking about the status of his new attorney and of his appeal, and the former attorney stated that she believed the defendant sent in the necessary paperwork for the appeal that she provided to him. The defendant later wrote to the Court of Appeals for the Third Circuit asking about the status of his appeal, and was told no appeal was pending. Id. The appeal was dismissed as untimely, and the defendant subsequently filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Id. The defendant claimed his counsel was ineffective by failing to file an appeal on his behalf, despite being instructed by the defendant to do so. Id. at *1.

44.     The district court held in Grier that counsel's strategy in suggesting that the defendant either file an appeal himself or secure new counsel, who after review of the evidence might believe meritorious grounds for appeal exist, did not amount to ineffective assistance under the circumstances. The district court stated:

> [The counsel] suggested to defendant both orally and in writing
> that if he wished to appeal, he would be better served by perfecting
> the appeal himself and securing new counsel who, after reviewing
> the evidence, might see meritorious grounds for an appeal. We do
> not find counsel's strategy to be ineffective.

Grier, 2002 WL 32355609 at *3.[8]

45.     Petitioner requested DePasqaule appeal his sentence immediately after the sentencing

---

[8] The district court held that the counsel's letter, which the defendant relied upon, caused the defendant to fail to file a timely appeal on his own behalf. Id. at *3. The court placed particular emphasis on the language in the letter stating "[p]lease find enclosed a copy of your sentencing sheet and copy of the notice of appeal and the financial affidavit you need to complete to have counsel appointed." The district court believed a layperson might conclude from that language that he was receiving copies of an appeal already filed on his behalf. Id. at *3-4. The district court therefore granted the defendant's section 2255 motion and allowed the defendant to proceed with his direct appeal nunc pro tunc. Id. at *4. Those circumstances do not exist in this case. Petitioner was aware that no appeal was filed on his behalf, and the language of DePasquale's letter would not mislead a layperson into believing that an appeal would be filed on his behalf.

hearing, just as the defendant requested in Grier. DePasquale's strategy was to avoid pursuing a meritless appeal, but to provide the client with the relevant information needed to pursue an appeal on his own behalf if he chose to do so. This strategy was virtually identical to that chosen by the defendant's counsel in Grier, which did not rise to the level of ineffective assistance of counsel.

46.      DePasquale's letter informed petitioner of the right to appeal, informed him that no appeal would be filed unless he did so, informed him who to notify to perfect the appeal, and informed him about the deadline for filing the appeal. Petitioner, however, failed to file a notice of appeal on his own, and was not prejudiced. See United States v. Morales-Morales, No. CRIMA02-2008202KHV, 2005 WL 3845347 at *7 (D. Kan. Jan 7, 2005) (even if the defendant did not waive rights to post-conviction relief, the defendant was not prejudiced if he has "ample time to file an appeal on his own behalf and counsel specifically advised defendant of his right to do so."). The ground that petitioner argues DePasquale should have based the appeal upon, that petitioner's plea was induced by false promises, also has no merit for reasons already explained. Furthermore, petitioner could have been severely harmed if counsel filed the appeal in this situation. The important benefits petitioner received from the plea agreement, including the government's agreement to not pursue life imprisonment and to not pursue his case in Kansas, would have been forfeited. Based upon all the foregoing, petitioner was not prejudiced, and he failed to establish ineffective assistance of counsel.

## V.  Certificate of Appealability

When a district court issues a final order denying a section 2255 petition, the court must also make a determination concerning whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination as to whether a certificate should issue.  See 3rd Cir. LAR. 22.2 (2002).  Based upon the motion and files and records of the case, and for the reasons set forth herein, the court finds that petitioner has not shown a substantial denial of a constitutional right.  Therefore, a COA should not issue.

## VI.  Order

AND NOW, this 25th day of November, 2008, upon consideration of petitioner's motion and the government's brief in opposition, IT IS HEREBY ORDERED that petitioner's motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255 (Doc. No. 356) is DENIED.

IT IS FURTHER ORDERED that no certificate of appealability should issue.

By the court:

 /s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

cc:  William J. McCabe
For the Defendant

Gregory Nescott
Assistant United States Attorney